United States District Court
Middle District of Florida
Jacksonville Division

FRANCES S. MIXON,

          Plaintiff,

v.                                                    NO. 3:21-cv-462-LLL

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

---

## Order Affirming Decision of Commissioner[1]

Frances S. Mixon seeks judicial review of a decision by the Commissioner of Social Security denying her claims for disability insurance benefits (DIB) and widow's insurance benefits (WIB) under the Social Security Act. 42 U.S.C. §§ 405(g); 402(e).[2] For the reasons stated below, the Commissioner's decision is affirmed.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, doc. 18, filed October 7, 2021; Order, doc. 19, entered October 12, 2021.

[2] The requirements to obtain widow's insurance benefits (WIB) are listed in 42 U.S.C. § 402(e).

## Background

Mixon was born on August 25, 1962, completed high school, and has past relevant work experience as a store laborer[3] and merchandise clerk. Tr. 20, 25, 45, 77-78, 263, 369. On December 6, 2018, Mixon applied for DIB, and on February 8, 2019, she applied for WIB. Tr. 263-69, 272-78. In both applications, Mixon alleged disability beginning July 31, 2017, due to hypertension, strokes-cerebrovascular accident, generalized anxiety disorder, brain aneurysm, high blood pressure, and high cholesterol. Tr. 77-78, 369. The Social Security Administration (SSA) denied her applications both initially and upon reconsideration. Tr. 75-124.

At Mixon's request, an administrative law judge (ALJ) conducted a hearing on May 22, 2020. Tr. 38-74. Mixon was represented by counsel and testified on her own behalf. *Id.* A vocational expert (VE) also testified. Tr. 66-73.

The ALJ found that Mixon: (1) is insured through September 30, 2022; (2) is the unmarried widow of a deceased insured worker over age 50, thus meeting the non-disability requirements for disabled widow's benefits in § 202(e) of the Social Security Act for a proscribed period that ended November 30, 2019; and had not engaged in substantial gainful activity since July 31, 2017, her alleged onset date; (2) had the severe impairments of obesity, hypertension, anxiety disorder, cerebral artery disease, gastroesophageal reflux disorder (GERD), and degenerative changes of cervical disc

---

[3] The ALJ refers to this past relevant work as "laborer, stores," in accordance with the Dictionary of Occupational Titles (DOT), *see, e.g.,* tr. 25; for ease of review, however, I will refer to the position as "store laborer."

2

disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) had the residual functional capacity (RFC) to perform "medium work"[4] as defined in 20 C.F.R. § 404.1567(c)[5] with some limitations, as follows:

> The claimant could lift and carry 50 lbs. occasionally and 25 lbs. frequently. She could sit for six hours, stand for up to six hours, and walk for up to six hours. She could push and pull as much as she can lift and carry. Occasional use of foot controls and *occasional use of hand controls*. She could climb ramps and stairs occasionally. She could handle, finger[,] and feel frequently. She can occasionally climb ramps and stairs. She can never climb ladders or scaffolds. She can frequently perform balancing, stooping, and crouching. She can occasionally kneel and never crawl. She should have no exposure to unprotected heights, and moving mechanical parts. She should never work in environments with temperature extremes. She is limited to routine and repetitive tasks. She is limited to no more than occasional interaction with supervisors, co-workers, and with the public. Time off task can be accommodated by normal breaks.

Tr. 18-19 (emphasis added). Finally, the ALJ determined that Mixon could perform her past relevant as a store laborer, Dictionary of Occupational Titles (DOT) §

---

[4] Unless otherwise noted, citations to the Code of Federal Regulations (C.F.R.) are to the version in effect at the time of the ALJ's decision.

[5] Under the Regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Social Security Administration] determine[s] that he or she can also sedentary and light work." 20 C.F.R. § 404.1567(c).

922.687-058, 1991 WL 688088, classified as medium exertion and unskilled with SVP[6] of 2, tr. 25; and in the alternative, there are jobs in the national economy Mixon could perform, including stuffer, laundry worker, and floor cleaner. Tr. 26-27. Considering these findings, the ALJ concluded Mixon was not disabled from July 31, 2017, through August 3, 2020. Tr. 27-28. On March 2, 2021, the Appeals Council denied Mixon's request for review. Tr. 1-4. The ALJ's decision is the final decision of the Commissioner. Tr. 2.

## Authority

The Social Security Act provides various benefits to those who cannot find work because of a disability. *See* 42 U.S.C. § 423(a). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a). A "physical or mental impairment" is defined as an "an impairment that results from anatomical, physiological, or psychological abnormalities demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Regulations (Regulations) set forth a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations

---

[6] SVP stands for specific vocational preparation.

4

omitted). The ALJ must determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment which meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has an RFC to perform past relevant work; and (5) given the claimant's RFC, age, education, and work experience, if there are other jobs the claimant can perform in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-38 (11th Cir. 2004).

Although the claimant has the burden of proof in steps one through four, the burden shifts to the Commissioner in step five to show "the existence of . . . jobs in the national economy which, given the claimant's impairments, [he or she] can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the Commissioner makes this showing, the burden shifts back to the claimant to "prove she is unable to perform the jobs suggested." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020). *See also Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986) (citing 20 C.F.R. § 404.1520(e) (explaining "[t]he Regulations require that the claimant not be able to perform his past kind of work, not that he merely be unable to perform a specific job he held in the past.").

A Court's review of a decision by the Commissioner is limited to determining whether correct legal standards were applied and that substantial evidence supports the findings. 42 U.S.C. § 405(g). *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence "is more than a mere scintilla. It means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (additional citation and quotations

omitted). The Supreme Court in *Biestek* clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficient is not high." *Id.* In its review, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the ALJ. *Goode*, 966 F.3d at 1280.

Within this role, however, federal courts do not "act as automatons." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Court retains an important function to "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* And while the Court reviews the Commissioner's decision with deference to her factual findings, legal conclusions are reviewed de novo. *Keeton v. Dep't of Health and Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation omitted). An ALJ's failure to "apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991) (additional citation omitted).

## Analysis

Mixon argues the ALJ erred for four reasons: (1) the ALJ failed to "appropriately rely" on the testimony of the VE, whose testimony conflicts with the DOT[7] description of the job testified about; (2) the ALJ cursorily rejected rebuttal vocational evidence; (3) the ALJ "did not reasonably discredit" the second

---

[7] The DOT is a main source of jobs data relied on by the SSA; and the DOT is the primary source for information about work requirements in the national economy. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364-65 (11th Cir. 2018) (citing SSR 00-04-, 2000 WL 1898704, at *2).

consultative examination opinion of Dr. Malik; and (4) the ALJ and Appeals Council AAJs lacked the constitutional authority to decide Mixon's case. Doc. 24 at 1.

### a. The ALJ appropriately relied on the testimony of the vocational expert

As stated above, Mixon argues the ALJ improperly relied on the testimony of the VE because Mixon alleges it is inconsistent with her abilities to perform prior relevant work, as actually and generally performed, and the other jobs[8] cited by the ALJ in his step-five finding. Specifically, Mixon contends the ALJ failed to "identify, acknowledge, and resolve" the "apparent" conflict between the VE's testimony and the DOT descriptions of these jobs. *Id.* at 5. The Commissioner counters there is no apparent conflict between the VE's testimony and the job description(s) in the DOT, and, in any case, because the ALJ found Mixon could perform her past relevant work as she actually performed it, the ALJ's reliance on the VE's testimony was proper. Doc. 29 at 7-9.

An ALJ may obtain the testimony of a VE to help determine a claimant's past relevant work and her ability to perform that work. *Cantu v. Kijakazi*, No. 8:21-CV-637-AEP, 2022 WL 3357576, at *3 (M.D. Fla. Aug. 15, 2022) (citing *Phillips*, 357 F.3d at 1240). A VE may use his expertise to offer relevant evidence about the physical or mental demands of a claimant's past relevant work, "*either* as the claimant actually performed it or as generally performed in the national economy," 20 C.F.R. §

---

[8] Including, stuffer (DOT § 520.685-210); laundry worker (DOT § 361.685-018); and floor cleaner (DOT § 381.687-018). *See* tr. 27.

404.1560(b)(2) (emphasis added); and such testimony may establish substantial evidence; but to do so, the ALJ must ask the VE a hypothetical question which includes all of the claimant's impairments. *Wilson*, 284 F.3d at 1227 (additional citation omitted).

At the hearing, the VE testified that he read Mixon's file, listened to her testimony, and reviewed her work history. Tr. 67. In summarizing Mixon's past jobs, the VE explained that her former work as a store laborer was performed at a medium exertional level. Tr. 68. The ALJ posed a hypothetical question to the VE incorporating the limitations in his RFC finding, including "the occasional use of hand controls" and the VE opined that she could perform the job of store laborer. Tr. 68-69.[9] Based on this testimony, the ALJ found that Mixon could perform her past work as a "laborer, stores" "generally and actually performed;" as it does not require Mixon to perform activities precluded by her RFC. Tr. 25.

Upon review, I find substantial evidence supports the ALJ's finding that Mixon could perform past relevant work as a store laborer, actually performed. A VE may offer an opinion that a claimant can perform past work, based on how she actually performed it, without relying on the DOT. 20 C.F.R. § 404.1560(b)(2). *See also Savor v. Shala*, 868 F. Supp. 1363, 1365 (M.D. Fla. 1994) (noting approvingly that the VE testified about the previous occupations of the claimant in relation to the claimant's abilities).

---

[9] Mixon's counsel did not object to the VE's testimony on these points. Tr. 68-69.

The ALJ properly relied on the VE's opinion that Mixon could perform her past work as store laborer. In her work history report, Mixon describes her prior jobs as store laborer, including her assigned tasks, tr. 314-17; while there is some evidence, as Mixon identifies, that she used hand and foot controls on the job, there is nothing in the report suggesting the use of hand or foot controls was more than occasional. *Id.* Thus, I find no discrepancy between the past work Mixon actually performed and the VE's testimony she could perform her past relevant work.

Additionally, I find no conflict between the store laborer position as generally performed and the store laborer position as described in the DOT. Tr. 25. Social Security Ruling 00-4p explains the standards ALJs are to use when relying on VEs. 65 F.R. 75759-01, 75759 (Dec. 4, 2000). Under SSR 00-4p, an ALJ must "[i]dentify and obtain a reasonable explanation between occupational evidence provided by VEs and information in the DOT." *Id.* And where there is an "apparent or unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . to support a determination or decision about whether the claimant is disabled." *Id.* at 75760. Further, neither VE evidence nor the DOT is to be automatically given extra weight; rather the ALJ must show his work and provide a basis for relying on one type of information over the other. *Id.*; *see also* 20 C.F.R. § 404.1560(b)(2) (explaining how the SSA determines whether a claimant can do past relevant work).

In interpreting SSR 004-p, the Eleventh Circuit has explained that an ALJ has "an affirmative obligation to identify any 'apparent' conflict and resolve it. The failure

to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). *See also id.* at 1365-66 (having held that an ALJ has an affirmative duty to both identify and resolve a conflict between a VE and the DOT in a disability hearing, the question becomes whether the conflict was "apparent."). The Eleventh Circuit clarified, that in this context, "an apparent conflict" is "reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* (quotations omitted). The Eleventh Circuit further clarified what constitutes an "apparent conflict" in *Buckwalter v. Acting Commissioner of Social Security*, 5 F.4th 1315, 1323 (11th Cir. 2021) explaining that "[p]otential[] tension" between a claimant's identified limitations and positions with a certain reasoning level does not rise to the level of an apparent conflict, because the terms at issue ("simple" and "detailed") do not "plainly contradict" each other, unlike the terms at issue in *Washington* ("occasionally" and "frequently"). *Id.* (citing *Washington*, 906 F.3d at 1366).

The DOT describes the occupation of "laborer, stores," § 922.687-058, as someone who, in part:

> *performs any combination of following tasks* to receive, store, and distribute material, tools, equipment, and products within establishments: Reads production schedule, customer order, work order, shipping order, or requisition to determine items to be moved, gathered, or distributed.

10

Conveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck. Sorts and places materials or items on racks, shelves, or in bins according to predetermined sequence, such as size, type, style, color, or product code. Sorts and stores perishable goods in refrigerated rooms. Fills requisitions, work orders, or requests for materials, tools, or other stock items and distributes items to production workers or assembly line. Assembles customer orders from stock and places orders on pallets or shelves, or conveys orders to packing station or shipping department. Marks materials with identifying information, using stencil, crayon, or other marking device. Opens bales, crates, and other containers, using handtools. Records amounts of materials or items received or distributed. Weighs or counts items for distribution within plant to ensure conformance to company standards. Arranges stock parts in specified sequence for assembly by other workers. May use computer to enter records. May compile worksheets or tickets from customer specifications . . . . May drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment. May complete requisition forms to order supplies from other plant departments. May prepare parcels for mailing. May maintain inventory records. May restock aircraft commissary supplies, such as linens, glasses, emergency kits, and beverages. . . .

DOT § 922.687-058, 1991 WL 688088.

I find no "apparent conflict" between the DOT's definition and the VE's test.

*See Buckwalter*, 5 F.4th at 1323. The DOT's description of store laborer is permissive;

it begins by reciting that it is a position which "[p]erforms any combination of the

following tasks . . . . " DOT § 922.687-058. And within that definition, it lists many

tasks that require little more than the occasional use of hand or foot controls to

perform, such as reading production schedules, work orders, shipping orders, filling

requisitions and work orders, marking materials with identifying information, and

11

compiling worksheets or tickets. As evident from my review of DOT § 922.687-058, there is nothing to suggest that the DOT description of store laborer, as generally performed, requires more than occasional use hand or foot controls. *See Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854, 857 (11th Cir. 2019) (finding that, though the VE acknowledged the claimant's limitation, she could not communicate frequently with others, there was no apparent conflict with the DOT because the DOT description did not contain specific communication requirements).

Because I find: (1) no apparent conflict between the VE's testimony about the store laborer position as generally performed and the DOT description; and (2) no conflict between how Mixon actually performed her past relevant work and her RFC, including the limitation of occasional use of hand controls, the ALJ's finding that Mixon could perform past relevant work as a store laborer, as generally and actually performed, is substantially supported.[10]

### b. The ALJ did not err by rejecting rebuttal vocational evidence

Next, Mixon argues the ALJ erred when he rejected without explanation the rebuttal vocational evidence proffered by Paula Santagati, a vocational rehabilitation counselor. Doc. 24 at 10-14 (citing tr. 406-08). In her response, the Commissioner explains Mixon applied for DIB and WIB after March 2017, and therefore the revised

---

[10] Therefore, I need not reach the question of whether the alternative work outlined by the ALJ is consistent with the RFC findings.

Regulations for evaluating medical evidence apply to her claim, 20 C.F.R. § 404.1520b(c);[11] and that under the revised Regulations, *id.*, the ALJ acted properly.

In a written report submitted after the hearing, Ms. Santagati opined that all Mixon's unaccommodated work, including her prior relevant work and other alternative jobs, including stuffer, laundry worker, and floor cleaner, would be precluded because of Mixon's limitations on interacting with others; she also concluded it is unlikely that Mixon could sustain competitive, full-time employment. Tr. 406-07. The ALJ acknowledged Ms. Santagati's report but rejected her opinion. Tr. 27 (citing 406-10). Instead, the ALJ relied on the testimony of VE Mark Capps who gave his opinion at the hearing. Tr. 27; *see* also tr. 67-72.[12]

The ALJ's decision to reject the opinion of Ms. Santagati was supported by substantial evidence. The ALJ did not have to provide greater detail or discussion of his finding because under the revised Regulations, statements that a claimant is or is not disabled, able to work or perform regular or continuing work, and whether a claimant's RFC allows him to perform past relevant work are issues reserved to the Commissioner. 20 C.F.R. § 404.1520b(c). These statements are, therefore, "inherently neither valuable or persuasive" to the question of whether of a claimant is disabled

---

[11] For claims filed on or after March 27, 2017, such as Mixon's, the revised Regulations alter the way certain evidence is evaluated, including decisions by other governmental agencies and nongovernmental entitles, disability examiner findings, and issues reserved for the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(1)-(3).

[12] Counsel for Mixon did not object to Mr. Capp's qualifications as an expert at the hearing. Tr. 67.

under the Act, *id.* Thus, for claims filed on or after March 27, 2017, the SSA "will not provide any analysis about how [it] considered such evidence in [the] determination or decision." 20 C.F.R. § 404.1520b(c)(3).

Ms. Santagati's opinion that Mixon could not sustain full-time, competitive employment with or without accommodations constitutes a statement on an issue reserved to the Commissioner, 20 C.F.R. § 404.1520b(c); the ALJ was not, therefore, required to provide any extra reasoning to reject Ms. Santagati's view, while relying on the testimony of VE Capps. Mixon's arguments for reversal on this issue, doc. 24 at 10-14, lack merit.

### c.  The ALJ properly considered the opinion of Dr. Malik

Mixon next contends the ALJ failed to "reasonably discredit" a second consultative examination opinion by Dr. Aleem Malik, M.D. Doc. 29 at 14-22, tr. 637-42. Specifically, Mixon quarrels with the ALJ's decision to find Dr. Malik's opinion rendered in April 2019 persuasive, but Dr. Malik's August 2019 opinion unpersuasive. Doc. 24 at 17. The Commissioner counters that the ALJ properly considered and articulated his evaluation of Dr. Malik's opinions under the revised Regulations.[13]

After careful consideration, including a thorough review of the record and arguments of the parties, the Court finds the ALJ's finding regarding the medical

---

[13] On January 27, 2017, the SSA revised the rules relating to the evaluation of medical evidence for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c ("[f]or claims filed . . . on or after March 27, 2017, the rules in [§ 404.1520c] apply.").

opinion of Dr. Malik was reasonable and supported by substantial evidence. *MacGregor*, 786 F.2d at 1053.

Under the revised Regulations, the ALJ is to weigh the persuasiveness of medical opinions considering these factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) any other relevant factors which tend to support or contradict a medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a)-(c). Supportability refers to how much a medical source has articulated support for its own opinion. 20 C.F.R. § 404.1520c(c)(1); *Barber v. Comm'r of Soc. Sec.*, No. 6:20-cv-1222-LRH, 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted). Consistency is the extent to which the provider's opinion conforms to other evidence in the record. *Id.* (citations omitted).

Of the foregoing factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(a). The ALJ must explain how he considered supportability and consistency but need not explain his analysis of the remaining factors. *Id.* § 404.1520c(b)(2). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." *Id.* § 404.1520c(a). The "new regulations are not inconsistent with Eleventh Circuit precedent holding that the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-

J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citation and quotation omitted omitted).

Dr. Malik performed a consultive examination of Mixon on April 27, 2019. Tr. 637-42. At that April exam, Dr. Malik noted that Mixon's chief complaint was that she suffered a stroke in late 2015, suffered from a brain aneurism, had cholesterol problems, stress, anxiety, and a lack of motivation. Tr. 637. Mixon reported no recent health changes, including neurological, psychiatric, or cardiac symptoms; Dr. Malik noted that she was alert and oriented, had a "basically normal gait and balance" with a slight hold on her right foot. Tr. 637-38. Exams of her ears, nose, and throat were normal, as were her respiratory and cardiovascular, and abdominal exams. Tr. 638. Dr. Malik noted, however, that Mixon had swelling over her mid-thoracic region. *Id.* Mixon had normal, 5/5 neuromuscular strength in her extremities and grip, and normal gait and balance. Tr. 639. She had mild difficulty squatting and rising, and no issues getting on and off the exam table, tandem walking, walking on her heels, and walking on her toes. Tr. 640. Further, Dr. Malik noted that Mixon had a normal range of motion in her cervical and lumbar spine, shoulder, elbow, wrist, hand, hips, knees, and ankle. Tr. 640-42. Following a fairly unremarkable exam, Dr. Malik provided a medical source statement opining that Mixon could stand/walk for six hours in an eight-hour workday, lift/carry 30 pounds frequently and 60 pounds occasionally could and "perform activities involving fine manipulative functions of hands regularly." Tr. 642.

Dr. Malik evaluated Mixon again, just four months later, on August 10, 2019, during another consultative examination. Tr. 645-51. This time, Mixon had additional complaints of pain; she described weakness to the left side of her body, a tendency to veer to the left, and increased anxiety. Tr. 645. Dr. Malik's notes from this examination largely track the April 2019 examination, with several notable exceptions: her back swelling had resolved, tr. 647, she had mild difficulty getting off and on the exam table, moderate difficulty tandem walking, and slightly impaired finger to nose coordination, tr. 648; and though she still had a normal gait, her Romberg was "weakly positive." Tr. 647. In that four-month time period, Dr. Malik's findings changed; he found that Mixon could stand/walk for four hours (instead of six) in an eight-hour workday, could lift/carry 20 pounds frequently (instead of 30) and 40 pounds occasionally (instead of 60) and again, could "perform activities involving fine manipulative functions of hands regularly." Tr. 650.

The ALJ accurately summarized Dr. Malik's reports, recounted above, tr. 22, and found Dr. Malik's opinion/assertion that Mixon could perform work at the medium exertional level from the earlier, April 2019, exam persuasive, tr. 24. In support, the ALJ noted that Mixon's range of motion, strength, gait, and balance were all normal and she only had mild difficulty squatting and rising. *Id.* The ALJ found, however, Dr. Malik's findings from the second exam unpersuasive. Tr. 24. The ALJ specifically and accurately articulated his reasons for doing so: there were only four months between the two exams; and Mixon still had normal strength and range of motion, gait, and station. Tr. 24. And the ALJ accurately recounted that, although

17

Mixon had increased difficulty squatting, rising, tandem walking and getting off the examination table; her difficulties still presented as mild to moderate. Tr. 24.

Mixon faults the ALJ's rationale in finding Dr. Malik's April 2019 opinion persuasive while also finding his August 2019 opinion unpersuasive; this argument lacks merit. It is not the role of the Court to "reweigh the importance attributed to the medical evidence" by the ALJ. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (citation omitted). Further, as noted above, an ALJ must only address the supportability and consistency factors in his decision. 20 C.F.R. § 404.1520c(b)(2). When specifically addressing the consistency factor, the ALJ found the August 2019 opinion of Dr. Malik unpersuasive because there were no treatment records in the four months between exams to support a "dramatic reduction in the exertional level." Tr. 24.

Upon review, this statement appears accurate. There is no evidence Mixon sought treatment, even emergency treatment during the four-month period between the two exams. And regarding supportability, the ALJ articulated that Dr. Malik's August 2019 opinion that Mixon was able to stand/walk for only four hours and lift and carry a reduced amount of weight was not supported by his own examination revealing normal muscle strength and a normal range of motion. It is clear from the context of ALJ's decision that, although Mixon had increased difficulties performing specific tasks, the increase did not justify such a dramatic reduction in her exertional level. Additionally, the ALJ articulated there was no justification in his own exam to support his findings. I find the ALJ's "conclusions reflect adequate consideration of

the relevant factors, *see* 20 C.F.R. § 404.1520c, and are supported by substantial evidence." *Farr v. Kijakazi,* No. 2:20-CV-782-JRK, 2022 WL 557963, at *4 (M.D. Fla. Feb. 24, 2022).

### d. **The ALJ's authority**

Lastly, Mixon contends she is entitled to a de novo review before a different ALJ because the ALJ received his authority from ex-Commissioner Andrew Saul, who was subject to what Mixon claims is an unconstitutional removal provision pursuant to the Supreme Court's holding in *Seila Law*. [14] Doc. 24 at 22-23. The Commissioner agrees the statute at issue, 42 U.S.C. § 902(a)(3), violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without good cause. Doc. 29 at 17. The Commissioner contends, however, that Mixon has not shown the constitutional violation she asserts caused her any compensable harm. *Id*. at 18, 22-27. Further, the Commissioner argues the ALJ who decided Mixon's case had his appointment ratified by an Acting Commissioner of Social Security, whom the President could have removed at will, and therefore his appointment was constitutional because it was unaffected by the removal restriction. *Id*. at 18-20. After review, the Court agrees Mixon's argument lacks merit.

Assuming, arguendo, that the provision at issue is unconstitutional under *Seila Law*, Mixon presents no evidence to suggest there is any connection between the

---

[14] In *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the Supreme Court held that the for-cause restriction on the President's executive power to remove the single Director of the Consumer Financial Protection Bureau (CFPB) violated the constitutional separation of powers. 140 S. Ct. at 2197.

removal provision and any possible compensable harm to her; put another way, she fails to show that but for the provision, her claim would have been decided differently by the ALJ or Appeals Council. In making this finding, the Court considers the principles outlined in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), in which the Supreme Court held that the Federal Housing Finance Agency (FHFA) director's statutory for-cause removal protection violates the separation of powers under *Seila Law*. *Id*. at 1783. The Court went on to clarify that

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA . . . as void.

*Id*. at 1787 (emphasis in original). When discussing the possibility of obtaining retrospective relief, the Court found "it is still possible for an unconstitutional provision to inflict compensable harm." *Id*. at 1788-89. Ultimately, the Court left that question to the lower courts; however, in her concurrence, Justice Kagan explained "I also agree that plaintiffs alleging a removal violation are entitled to injunctive relief— a rewinding of agency action—only when the President's inability to fire an agency head affected the complained of decision." *Id*. at 1801 (Kagan, J., concurring).

Because the sole constitutional deficiency Mixon complains of is a removal issue, like that in *Collins*, and she fails to adequately allege any compensable harm or connection between the removal provision and the decision at issue, the Court finds

20

she is not entitled to a new hearing. *See Herring v. Comm'r of Soc. Sec.*, No. 2:21-cv-322-MRM, 2022 WL 2128801, at *5 (M.D. Fla. June 14, 2022) (finding plaintiff failed to identify how the same removal provision at issue caused any compensable harm, for example that the "President was unable to remove Mr. Saul as a result of the alleged unconstitutional tenure" or that, "absent the alleged unconstitutional provision, [the plaintiff's] claim would have been decided differently at either the ALJ or the Appeals Council level.").

In her reply brief, doc. 32, Mixon argues the actions of the Appeals Council, in denying her request for review, were unconstitutional because they occurred after President Biden took office, whom she argues would have fired ex-Commissioner Saul immediately upon assuming his presidency. Doc. 32 at 5-8. Specifically, Mixon claims that: (1) President Biden's request for advice from the Department of Justice regarding whether he could terminate ex-Commissioner Saul after the Supreme Court decided *Collins*;[15] and (2) the content of President Biden's statement upon terminating ex-Commissioner Saul demonstrate that, but for the removal provision, he would have terminated Saul immediately upon taking office, before the actions of the Appeals Council in this case. *Id*. However, Mixon's argument in that regard is attenuated, speculative, and relies on assumptions. Further, because Mixon complains of a removal issue, *see id.* at 4, as opposed to an appointments issue, the actions of the Appeals Council are not void, as explained by the Court in *Collins*, 141 S. Ct. at 1787.

---

[15] *Collins* was decided June 23, 2021, over three months after the Appeals Council's actions in this case, dated March 2, 2021. Tr. 1; *Collins,* 141 S. Ct. at 1761.

Because Mixon fails to adequately establish any compensable harm, the Court finds she is not entitled to a de novo hearing.

Moreover, the ALJ's decision was issued on August 3, 2020. Tr. 12. On July 16, 2018, former Acting Commissioner of Social Security Nancy Berryhill, who could be removed at will by the President, ratified the appointments of the current ALJs and approved those appointments as her own. *See Raper v. Comm'r of Soc. Sec.*, No. 5:20-CV-597-PRL, 2022 WL 1078128, at *6 (M.D. Fla. Mar. 25, 2022) (citation omitted). Thus, the ALJ who authored the opinion was properly appointed when he adjudicated Mixon's case. And, when deciding this issue, courts in this district have routinely found the separation-of-powers argument to be meritless. *See id.*; *Page v. Comm'r of Soc. Sec.*, No. 6:21-CV-258-LHP, 2022 WL 1619168, at *8-9 (M.D. Fla. May 23, 2022) (rejecting a similar challenge because the plaintiff's application was adjudicated after the Acting Commissioner ratified the appointments of the Social Security Administration ALJs, and therefore, the ALJ was constitutionally appointed during all relevant aspects of the decision); *Corns v. Comm'r of Soc. Sec.*, No. 8:20-CV-2605-VMC-SPF, 2022 WL 2975102, at *8 (M.D. Fla. June 30, 2022), *report and recommendation adopted*, 2022 WL 2966855 (M.D. Fla. July 27, 2022) ("Acting Commissioner Berryhill was not subject to the unconstitutional removal provision on which plaintiff bases his claim, and any ratification of an ALJ by Acting Commissioner Berryhill would make that appointment constitutional."); *Concepcion v. Comm'r of Soc. Sec.*, No. 6:20-CV-2057-EJK, 2022 WL 2292950, at *9 (M.D. Fla. Mar. 3, 2022) (finding *Seila Law* did not apply where the ALJ was properly appointed at the

time of his November 25, 2019 decision); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-CV-2357-GKS-EJK, 2021 WL 6334838, at \*6 (M.D. Fla. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022) (finding the unconstitutional provision did not affect the plaintiff's case where the ALJ's decision was issued "well after the date of ratification of the ALJ"); *Johnson v. Kijakazi*, No. 8:20-CV-2117-AAS, 2022 WL 2292913, at \*6 (M.D. Fla. Feb. 8, 2022) (finding the ALJ was constitutionally appointed where the ALJ heard and decided the case after the Acting Commissioner ratified the appointments of the SSA ALJs and approved those appointments as her own).

Finally, "[i]t has long been settled that 'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'" *Seila Law*, 140 S. Ct. at 2208 (citation omitted). Thus, the provision at issue can be severed from the remainder of the Social Security Act because the SSA "can continue to fully function without the presence of the allegedly unconstitutional provision." *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at \*5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 61217 (Jan. 6, 2022) (citing *Seila Law*, 140 S. Ct. at 2209). Considering this principle, the Court is not persuaded by Mixon's broad assertion that the legal standards used to adjudicate her claim were "presumptively inaccurate," doc. 24 at 23. *See Tibbetts*, 2021 WL 6297530, at \*5. Remand is not warranted.

## Conclusion

After a thorough review of the record, the Court finds the ALJ's decision is supported by substantial evidence.

It is **ordered**:

1. The Clerk of Court is directed to **enter judgment** pursuant to sentence four of 42 U.S.C. § 405(g), **affirming** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**Ordered** in Jacksonville, Florida on September 28, 2022.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
Erik W. Berger, Esquire
John F. Rudy, Assistant United States Attorney
Nadine DeLuca Elder, Esquire